**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GLORIA MORA,

       Plaintiff,

v.

TRADER JOE'S COMPANY,

       Defendant.

)
)
)
)
)
)
)
)
)

Case No.

Judge

Jury Trial Demanded

## COMPLAINT

Plaintiff, Gloria Mora, by and through her attorneys, Pedersen & Weinstein LLP, for her

Complaint against Defendant, Trader Joe's Company, states as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action under the Civil Rights Act of 1964, as amended by the

Civil Rights Act of 1991, ("Title VII") to challenge Defendant's unlawful discrimination against

her based on her gender, including sexual harassment, and pregnancy, as well as the retaliation

she suffered as a result of opposing the illegal conduct.  Plaintiff also asserts claims under the

Fair Labor Standards Act, as amended by the Providing Urgent Maternal Protections for Nursing

Mothers Act ("PUMP Act"), the Illinois Human Rights Act ("IHRA"), and the Illinois Nursing

Mothers in the Workplace Act.

## JURISDICTION AND VENUE

2.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent

and supplemental jurisdiction.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §

1391(a).

## PARTIES

4.     Plaintiff, Gloria Mora, was formerly employed by Defendant as a crew member at its store in Evanston, Illinois.  Plaintiff began her employment in December 2015 and was unlawfully fired in April 2023.

5.     Defendant, Trader Joe's Company, is a privately held American chain of grocery stores with locations throughout the United States.  It has over 50,000 employees and generated gross revenues of over $15 billion in 2023.

6.     At all times relevant to this Complaint, Defendant employed more than 15 employees and was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

7.     As a crew member, Plaintiff's job duties included working the cash register, stocking shelves, cleaning the store, and assisting customers.

8.     Throughout her employment, Plaintiff discharged all duties assigned to her competently and enjoyed an excellent reputation with regard to the high quality of her work and her conscientious devotion to her job.  Plaintiff consistently received positive feedback on her job performance from her supervisors, colleagues and customers and never had any reason to believe that her job was in jeopardy.  Plaintiff was otherwise a dedicated employee who also stepped up to face the challenges presented by the COVID-19 pandemic by working with the public in the store despite natural concerns for her health and safety.

9.     Based on her experience and tenure with the company, Plaintiff had every reason to anticipate a long and rewarding career with Defendant.

2

***Defendant Discriminated Against Plaintiff On The Basis Of Her Gender
And Forced Her To Work In A Hostile Environment***

10.     Despite Plaintiff's commendable job performance and dedication to her job,

Defendant subjected Plaintiff to gender discrimination, including gross sexual harassment, and

forced her to work in a hostile environment.

11.     The sexual harassment began in approximately 2020, when Plaintiff began

reporting to Aaron Thompson ("Thompson"), a "mate", or assistant manager, who transferred to

her store.

12.     During his employment with Defendant, Thompson openly engaged in lewd and

offensive conduct towards women, including customers of the store.  He often said and did

things that were offensive and sexual in nature.  He gawked and stared at women's bodies.  He

leered at female customers.  He made obscene gestures to women.  He touched female crew

members inappropriately.

13.     Consistent with his pattern of misconduct towards women, when Thompson

worked with Plaintiff, he frequently directed offensive comments of a sexual nature to her and

even physically assaulted her.

14.     Examples of Thompson's unlawful conduct in this regard include, but are not

limited to, the following:

     a)     Thompson frequently made inappropriate comments about Plaintiff's physical appearance, such as "you're very pretty" and "you have a very nice body."

     b)     Thompson made offensive remarks that reflected his sexual attraction to Plaintiff.  For example, he often said "I like to watch you when you walk away," or words to that effect.  He also sent her texts reflecting his sexual attraction to her.

     c)     Thompson made inappropriate comments about Plaintiff's fiancé (now husband), such as "I wonder what your fiancé feels like when he's with

3

you," or words to that effect, clearly referring to when Plaintiff and her fiancé had sex.

d) Over time, Thompson's conduct escalated and grew increasingly more vulgar. For example, Thompson told Plaintiff "my pants get tighter when you're around me," or words to that effect, obviously implying that he got erections when she was near him.

e) Thompson physically and sexually assaulted Plaintiff. On one occasion when she was walking towards the back of the store, Thompson came up to her, grabbed her by the belt loops on her jeans, and pulled her pants down. Plaintiff was terrified and mortified by this attack.

***Plaintiff Reported The Sexual Harassment,***
***But Defendant Refused To Take Appropriate Remedial Action***

15. Plaintiff attempted to dissuade Thompson's harassment on her own, but his behavior only escalated and worsened over time. Although Plaintiff feared retribution, after Thompson assaulted her, she reported the sexual harassment to Matthew Stegner ("Stegner"), the "captain" or store manager, in early 2021.

16. Plaintiff had hoped that Stegner would take appropriate remedial action, but he did not. Quite to the contrary, Stegner responded to Plaintiff's report of sexual harassment by telling her "Aaron [Thompson] and I were friends before he started working here, he's a close friend of mine," or words to that effect. Plaintiff understood immediately that Stegner would do nothing to discipline Thompson in light of their friendship, although she asked Stegner if he could at least talk to Thompson about his behavior and said that she did not want to work with Thompson anymore, a modest request given that Plaintiff was a part-time employee who only worked one or two shifts a week. Stegner, however, immediately – and falsely – told Plaintiff that there was nothing he could do about the schedule. Plaintiff then asked if she could at least be assigned to work in a different section of the store than Thompson and Stegner would not even commit to that minor request.

17.     Stegner's mishandling of Plaintiff's complaint is consistent with how he handled other complaints about Thompson's sexual harassment. For example, when another female employee reported Thompson's sexual misconduct to Stegner, Stegner responded by trying to make her feel guilty and suggested that she was making up what Thompson had done to her.

18.     Stegner's decision to condone Thompson's behavior only emboldened him to continue harassing Plaintiff.  Thompson persisted in making a litany of vulgar, offensive and sexually explicit comments to Plaintiff, including telling her that he did not understand why her fiancé would let her out of the house "with all that ass hanging out" and walking behind her while sucking in air through his teeth as though he were sexually aroused by her.  Thompson also told Plaintiff that he wished he was in her husband's spot and asked if her husband would get mad if he ever found him [Thompson] in bed with her.  After Plaintiff announced she was pregnant, Thompson also told her that he wished the baby was his.

***Defendant Retaliated Against Plaintiff***

19.     As a result of Plaintiff reporting gender discrimination and sexual harassment, Defendant retaliated against her.  To be sure, although Stegner failed to take any appropriate remedial action whatsoever, he did disclose Plaintiff's report to Thompson, who then confronted her about it and accused her of "snitching" on him.

20.     Plaintiff spoke again with Stegner about her complaint of sexual harassment and told him that she knew he had told Thompson about it because Thompson was mad at her.  She reiterated to Stegner that she wanted the behavior to stop and for Thompson "to keep his hands off of [her]."

21.     Proving that he would never address her concerns, Stegner replied by asking Plaintiff what she had done and "why would [Thompson] feel comfortable enough to do that to

you?" or words to that effect. Plaintiff was stunned and devastated by her manager's accusation

that she was to blame for Thompson's gross sexual misconduct.

22.     As further retaliation, Thompson also cut Plaintiff's hours and pay in the spring of

2021.

23.     In early 2022, Defendant also denied Plaintiff an annual raise, claiming it was

"because of your situation." Plaintiff understood that to be a reference to her complaints of

sexual harassment and/or because she was pregnant. Defendant also unjustly issued Plaintiff a

poor performance review in early 2022.

24.     Stegner's retaliation against Plaintiff is consistent with how he handled other

reports of sexual harassment. For example, after the female employee referenced above reported

Thompson's misconduct to Stegner, Stegner retaliated against her by cutting her hours without

explanation.

***Defendant Discriminated Against Plaintiff Because Of Pregnancy***

25.     Plaintiff's work situation further deteriorated throughout 2022. In addition to

enduring the ongoing harassment and retaliation, she suffered further discrimination because of

her pregnancy and Defendant's blatant refusal to provide reasonable accommodations as

required by federal and state law.

26.     To be sure, Plaintiff submitted medical documentation seeking modest

accommodations, namely lighter work during her pregnancy and the ability to sit down

periodically during her shifts. Stegner, however, callously refused her requests. He told her that

she was "asking for too much" and "shouldn't work at all" if she needed those accommodations.

Stegner further told Plaintiff, "This is a lazy person's perfect excuse not to work," or words to

that effect.

27.     Plaintiff needed to work, though, so she was forced to work without proper accommodations because of Defendant's unlawful refusal to provide them. Ultimately, Plaintiff had no choice but to reduce her schedule to one shift a week because that was all she could physically handle in light of Defendant's refusal to provide the modest accommodations she needed and had requested.

28.     Defendant's conduct also violated the Illinois Pregnancy Accommodation Law. Defendant had an obligation to provide Plaintiff with reasonable accommodations, which would include allowing her to perform lighter work or to sit down periodically during her shifts.

***Defendant Continued To Discriminate And Retaliate Against Plaintiff After Her Pregnancy***

29.     Plaintiff did her best to work through the situation as she needed her job and the income it provided, especially after the birth of her baby in April 2022.

30.     When Plaintiff returned to work in October 2022 after an extended leave of absence she needed to recover from childbirth, she hoped the situation would improve, but it did not. Thompson continued making offensive comments. He also became angry and jealous if Plaintiff spoke with male coworkers or customers.

31.     Defendant continued to retaliate against Plaintiff for her previous complaints of sexual harassment by giving her a poor review in January 2023 and threatened to fire her.

32.     Defendant also failed to provide an adequate space for Plaintiff to express breast milk, in violation of the FLSA and the Illinois Nursing Mothers in the Workplace Act. At first, in direct contravention of the law, Plaintiff was told to pump in one of the store's bathrooms, which was also shared with customers and was not hygienic. Plaintiff was then told to pump in a storage area upstairs that could only be accessed by unsteady fire escape style stairs. Plaintiff was then told she could use the demo kitchen, but that often was occupied by others and proved

unworkable.

33.    Plaintiff protested these directives and requested appropriate locations to pump, but her concerns were ignored.  Plaintiff ended up pumping in corners or near the employee lockers where her only privacy was the hoodie she tried to use to cover herself.

**_Defendant Created A Hostile Work Environment_**

34.    The cumulative effect of all the actions described herein was that Plaintiff was forced to work in a hostile environment.

**_Defendant Unlawfully Fired Plaintiff_**

35.    Ultimately, as further discrimination and retaliation, Defendant abruptly fired Plaintiff in April 2023, claiming she had failed to work for 21 days and "abandoned" her job. This explanation is pretext and Defendant purposely orchestrated events to justify firing Plaintiff unlawfully.

36.    More specifically, Defendant knew that Plaintiff was temporarily working one shift a week because her full-time job was in accounting and it was tax season; after mid-April she was to return to her regular schedule.  Defendant had also approved Plaintiff's request to take off two Saturdays in April (the regular days she worked) and then failed to schedule her for the two Saturdays before (meaning she did not work at all those weeks).  Although Plaintiff was then scheduled to work on Saturday, April 22, Stegner fired Plaintiff on April 16, claiming she violated the policy of not working for 21 days.  Accordingly, even if there was a policy, Stegner obviously created the so-called violation by approving Plaintiff's request for time off and then purposely failing to schedule her before those days.

37.    Given all the circumstances, including the pattern of blatant sexual harassment, the clear retaliation, and the contrived explanation for her termination, there is no question that

Defendant fired Plaintiff because of her gender and pregnancy and because she opposed the company's unlawful conduct.

***Defendant Failed to Exercise Reasonable***
***Care To Prevent and Correct Unlawful Conduct***

38.     Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.  Further, Defendant failed to exercise reasonable care to prevent and correct promptly any gender discrimination and harassment.  Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

39.     The discrimination and retaliation described above was consistent with Defendant's standard operating procedure.

***Plaintiff Timely Filed A Charge of Discrimination and Retaliation***

40.     Plaintiff timely filed a charge of discrimination and unlawful retaliation with the EEOC.  Plaintiff subsequently requested and received her Notice of Right to Sue.

41.     The EEOC cross-filed Plaintiff's charge of discrimination with the Illinois Department of Human Rights ("IDHR") pursuant to the work-sharing agreement between the EEOC and IDHR.  After requesting and receiving her Notice of Right to Sue from the EEOC, Plaintiff submitted a Notice of Opt Out of IDHR's Investigative and Administrative Process to the IDHR so she may pursue her state law claims in court.  This Court has supplemental jurisdiction over Plaintiff's IHRA claims pursuant to 28 U.S.C § 1367(a).

***Plaintiff Suffered Damage***

42.     As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

43.     Plaintiff has lost wages, compensation and benefits as a result of Defendant's

unlawful conduct.

44.     Plaintiff's career and reputation has been irreparably damaged as a result of Defendant's unlawful conduct.

45.     Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct.  Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

***Punitive Damages***

46.     Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights.  The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

47.     Plaintiff realleges paragraphs 1 through 46 and incorporates them by reference into Count I of this Complaint.

48.     Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of sex.  Title VII also prohibits sexual harassment.  Sexual harassment that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII.

49.     By the conduct as alleged herein, Defendant subjected Plaintiff to gender discrimination in violation of Title VII.

## COUNT II

### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII

50. Plaintiff realleges paragraphs 1 through 49 and incorporates them by reference into Count II of this Complaint.

51. Title VII makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, on the basis of sex, including on the basis of pregnancy, childbirth, or related medical conditions.

52. By the conduct as alleged herein, Defendant subjected Plaintiff to pregnancy discrimination in violation of Title VII.

## COUNT III

### RETALIATION IN VIOLATION OF TITLE VII

53. Plaintiff realleges paragraphs 1 through 52 and incorporates them by reference into Count III of this Complaint.

54. Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

55. Defendant retaliated against Plaintiff for her complaints of discrimination. By the conduct described herein, Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII.

## COUNT IV

### VIOLATION OF THE FLSA AND PUMP ACT

56. Plaintiff realleges paragraphs 1 through 55 and incorporates them by reference into Count IV of this Complaint.

57.     The FLSA, as amended by the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

58.     In violation of the FLSA and PUMP Act, Defendant failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

59.     Defendant knowingly and willfully refused to provide an appropriate, clean, and secure place free from intrusion within which to pump breast milk, in violation of the FLSA and the PUMP Act.

## COUNT V

## RETALIATION IN VIOLATION OF THE FLSA

60.     Plaintiff realleges paragraphs 1 through 59 and incorporates them by reference into Count V of this Complaint.

61.     29 U.S.C. § 215(a)(3) makes it unlawful for an employer to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under the FLSA.

62.     Plaintiff complained to Defendant about violations of the FLSA and the PUMP Act.

63.     Defendant knowingly and willfully retaliated against Plaintiff because of her complaints about the violations of the FLSA. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the FLSA.

## COUNT VI

### GENDER DISCRIMINATION IN VIOLATION OF THE IHRA

64.     Plaintiff realleges paragraphs 1 through 63 and incorporates them by reference into Count VI of this Complaint.

65.     The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102(A), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of sex.  The IHRA, specifically 775 ILCS 5/2-102(D), further provides that "[i]t is a civil rights violation [f]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment."

66.     By the conduct as alleged herein, Defendant subjected Plaintiff to sex discrimination, including sexual harassment, in violation of the IHRA.

67.     Under the IHRA, Defendant is also strictly liable for the sexual harassment by its male employees, whether or not it knew of the offending conduct.

## COUNT VII

### PREGNANCY DISCRIMINATION IN VIOLATION OF THE IHRA

68.     Plaintiff realleges paragraphs 1 through 67 and incorporates them by reference into Count VII of this Complaint.

69.     The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102(A), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of sex.  The IHRA, 775 ILCS 5/2-102(I), also makes it unlawful for an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or medical

or common conditions related to pregnancy or childbirth.

70.     The IHRA, as amended by the Illinois Pregnancy Accommodation Law, 775 ILCS 5/2-102(J)(1), also makes it unlawful for an employer to not make requested reasonable accommodations for any medical or common condition of an employee related to pregnancy or childbirth, unless the employer can demonstrate that the accommodation would impose an undue hardship on the ordinary operation of the business of the employer.

71.     The IHRA, 775 ILCS 5/2-102(J)(2), also makes it unlawful for an employer to deny employment opportunities or benefits to or take adverse action against an otherwise qualified employee if the denial or adverse action is based on the need of the employer to make reasonable accommodations to the known medical or common conditions related to the pregnancy or childbirth of the employee.

72.     By the conduct as alleged herein, Defendant subjected Plaintiff to pregnancy discrimination in violation of the IHRA.  Defendant also failed to provide reasonable accommodations to Plaintiff related to pregnancy and childbirth.

## COUNT VIII

## RETALIATION IN VIOLATION OF IHRA

73.     Plaintiff realleges paragraphs 1 through 72 and incorporates them by reference into Count VIII of this Complaint.

74.     The IHRA, specifically 775 ILCS 5/6-101(A), makes it unlawful to retaliate against an employee who opposes what she reasonably and in good faith believes to be unlawful discrimination or because she has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the act.

75.     Defendant retaliated against Plaintiff for her complaints of discrimination and

retaliation. By the conduct as described herein, Defendant subjected Plaintiff to unlawful retaliation in violation of the IHRA.

## COUNT IX

### VIOLATION OF THE ILLINOIS NURSING MOTHERS IN THE WORKPLACE ACT

76.     Plaintiff realleges paragraphs 1 through 75 and incorporates them by reference into Count IX of this Complaint.

77.     The Illinois Nursing Mothers in the Workplace Act, 820 ILCS 260/15, states that "An employer shall make reasonable efforts to provide a room or other location, in close proximity to the work area, other than a toilet stall, where an employee described in Section 10 can express her milk in privacy."

78.     In violation of the Illinois Nursing Mothers in the Workplace Act, Defendant failed to make reasonable efforts to provide Plaintiff with an appropriate location to express breastmilk.

79.     Defendant knowingly and willfully refused to make reasonable efforts to provide Plaintiff with an appropriate location to express breast milk, in violation of the Illinois Nursing Mothers in the Workplace Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a.      Declare that the acts and conduct of Defendant violate Title VII, the FLSA, the IHRA, the Illinois Nursing Mothers in the Workplace Act, and the anti-retaliation provisions of those laws;

b.      Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

15

c.      Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d.      In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e.      Award Plaintiff compensatory damages;

f.      Award Plaintiff punitive damages;

g.      Award Plaintiff liquidated damages;

h.      Award Plaintiff prejudgment interest;

i.      Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j.      Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  July 21, 2025

Respectfully submitted,

By:

*/s/Erika Pedersen*
Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
231 S. LaSalle Street
Suite 2100
Chicago, IL  60604
(312) 322-0710

16